BROOK v. BROOKLYN UNION ELEVATED R. CO.

(Supreme Court, Appellate Division, First Department.    January 19, 1912.)

1. CARRIERS (§ 308*)—TICKET OVER LINE OF CONNECTING CARRIER—LIABILITY OF INITIAL CARRIER.

In the absence of a special contract, a carrier, selling a coupon ticket for transportation over its own and connecting lines, assumes liability only for personal injuries occurring upon its own lines.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1264–1269; Dec. Dig. § 308.*]

2. CARRIERS (§ 308*)—TRANSPORTATION BY CONNECTING CARRIER—NEGLIGENCE OF INITIAL CARRIER.

A carrier sold a coupon ticket to a point beyond its own lines, the coupon providing on its face that the initial carrier, in selling the ticket, was acting only as agent for the connecting carrier, and assumed no risk beyond its own line. While upon the connecting line, the car which the initial carrier furnished, and which ran through, caught fire, owing to some defect in its electrical equipment, and a passenger was injured. *Held,* that it was the duty of the initial carrier to furnish a safe and properly equipped car, of which duty it was not relieved by the arrangement between itself and the connecting line, and for the negligent breach of which duty it was liable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1264–1269; Dec. Dig. § 308.*]

Appeal from Trial Term, New York County.

Action by Amelia Brook, an infant, by John Brook, her guardian ad litem, against the Brooklyn Union Elevated Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

D. A. Marsh, for appellant.

Charles Goldzier, for respondent.

SCOTT, J. This action is for damages for personal injuries suffered by plaintiff while a passenger on a train running from the Brooklyn Bridge to Rockaway Beach. The car upon which plaintiff was riding caught fire, owing apparently to some defect in the electrical equipment, and in the resulting confusion plaintiff fell or was pushed from the car and sustained injuries. The defense is that when the accident happened the plaintiff was a passenger, not of this defendant, but of the Long Island Railroad Company, and that, if any one is liable to her, it is the latter company.

The plaintiff purchased from defendant a through ticket to Rockaway Beach, receiving what is known as a coupon ticket, showing on its face that the coupon for passage between Chestnut street and Rockaway Beach (which included the spot where plaintiff was injured) was issued by plaintiff on account of the Long Island Railroad Company. The coupon provided on its face that:

"In selling this ticket the Brooklyn Union Elevated Railroad Company acts only as agent for the Long Island Railroad Company, and assumes no risk beyond its own line."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The explanation of the use of this form of ticket lies in the fact that a continuous trip from the Brooklyn Bridge to Rockaway Beach involves running over the tracks both of the defendant and of the Long Island Railroad Company, which are connected by an incline owned in common by the two companies, who operate under a mutual agreement which provides that each company shall assume the risk of all liability for accidents which may occur upon its tracks, or those which it controls, resulting in loss or injury to any person or property. The servants of defendant are subject to all the rules and regulations of the Long Island Railroad Company while upon its tracks.  Chestnut street marks the line at which Rockaway Beach trains pass onto the tracks of the Long Island Railroad Company, and the car upon which plaintiff was a passenger had just passed that point when the accident occurred.  The defendant's contention is that, the instant the train passed Chestnut street, plaintiff ceased to be a passenger of defendant and to be entitled to that high degree of care due from a common carrier to a passenger.  The trial court declined to accept this view, and submitted the case to the jury as one between a passenger and a common carrier.  If the defendant's contention, therefore, is well founded, the judgment is wrong, and must be reversed; and this is the only question we are called upon to decide.

[1] Defendant's counsel, with great industry, has collected and called to our attention a number of cases dealing with the responsibility of an initial carrier, selling coupon tickets for transportation beyond its own line, for damages arising from negligence upon a connecting line; and he undoubtedly correctly states the general rule in saying that, in the absence of a special contract, a carrier selling a coupon ticket for transportation over its own and connecting lines assumes only liability for accidents occurring upon its own lines, and assumes no extraterminal liability for any accident or default upon any road except its own.  Talcott v. Wabash R. R. Co., 159 N. Y. 461, 54 N. E. 1, and cases cited.  This rule applies where the injury occurs upon the line of the connecting road, and is attributable to its neglect, and rests upon the perfectly logical basis that each carrier shall respond for its own acts of omission or commission.  If the injury to plaintiff had resulted from a collision, or derailment, or other default in operation on the line of the Long Island Railroad, it would be quite within the rule and eminently just to fasten liability upon that road, and not upon defendant, who no longer controlled the operation of the train.

[2] But the obligation of a common carrier to a passenger is not limited to exhibiting a high degree of care, intelligence, and foresight in operating its cars.  It is required to exercise an equally high degree of care in furnishing cars which are safe and properly equipped, and in keeping them in proper repair.  This duty devolves upon the carrier which undertakes to furnish the car, and it is not relieved from responsibility for its failure to perform the duty because by arrangement between itself and another company its car runs over the tracks of that other company.  In the present case the defendant accepted plaintiff as a passenger for a through trip and furnished a

car in which to make the trip. The accident resulted, as the jury found, from the fact that the car, when furnished, was not as safe an appliance as the defendant should have furnished in fulfillment of its duty, and the accident occurred in consequence of this breach of duty. The plaintiff's injuries, therefore, were the direct result of defendant's negligent breach of its duty when it accepted plaintiff as a passenger, and undertook to furnish a safe car for her transportation. To this case the rule relied upon by defendant has no application.

Judgment and order affirmed, with costs. All concur.